```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         FORT WAYNE DIVISION
```

DIANNE and VINCENT DeMIDIO,         )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  )    No. 1:17-CV-326
                                    )    Consolidated with
REV RECREATION GROUP, INC.,         )    No. 1:17-CV-350
                                    )    Solely for the Purpose of Ruling on the
        Defendant.                  )    Motions to Dismiss

KIMBERLY GREENWELL AND              )
ALFRED JOHN GREENWELL               )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  )    No. 1:17-CV-350
                                    )
REV RECREATION GROUP, INC.,         )
                                    )
        Defendant.                  )

## OPINION AND ORDER

These two cases, as the caption indicates, were consolidated for ruling on two motions to dismiss filed by Defendant REV Recreation Group. REV filed its original motion to dismiss in the first case, 1:17-CV-326, on September 29, 2017 (ECF 4), asking the Court to dismiss the complaint filed by Plaintiffs Dianne and Vincent DeMidio or, in the alternative, to stay the case pending arbitration. The DeMidios filed a response in opposition on November 3, 2017 (ECF 10) and REV filed a reply on November 27 (ECF13). REV filed a motion to dismiss in case number 1:17-CV-350 on October 13, 2017 (ECF 5), seeking dismissal of the complaint filed by Plaintiffs Kimberly and Alfred John Greenwell based on the same arguments raised in the *DeMidio* case. Before the Greenwells filed a response in opposition, the parties filed a joint motion to

consolidate these cases pursuant to Federal Rule 42(a) and Local Rule 42-2(a), which was granted on December 14, 2017. Court Order of Consolidation (1:17-CV-326, (ECF 15); 1:17-CV-350, (ECF 20)). In accordance with that order of consolidation, REV filed an Amended Motion to Dismiss Plaintiffs' Complaints; or, Alternatively, to Stay the Action[s] Pursuant to 9 U.S.C. § 3 on December 29 (ECF 16 in 1:17-CV-326 and ECF 21 in 1:17-CV-350). It is this amended motion that is before the Court. The DeMidios and Greenwells filed a joint response in opposition on January 26, 2018 (ECF 20) and REV filed a reply on February 15 (ECF 21). Finally, on March 9, the Plaintiffs filed a Notice of Supplemental Authority (ECF 22), to which REV responded on March 16 (ECF 23). For the reasons discussed below, REV's amended motion to dismiss is DENIED. The Court's Order of Consolidation, its purpose fulfilled, is hereby WITHDRAWN and each case will proceed before the judicial officer to whom it was previously assigned (1:17-CV-350, Chief Judge Theresa L. Springmann; 1:17-CV-326, Judge William C. Lee).

## BACKGROUND

The DeMidios and the Greenwells bought recreational vehicles manufactured and warranted by REV. The DeMidios purchased their RV, a 2017 Fleetwood Storm 32A, on December 3, 2016, and the Greenwells purchased their 2017 Holiday Rambler Endeavor 40E on March 15, 2017. Plaintiffs' Response in Opposition, pp. 2, 3. The couples allege that their respective RVs had many problems and defects that REV failed to repair. The DeMidios sued the company for "breach of warranty and/or contract," violations of the Magnuson Moss Warranty Act, and "violation of applicable state Udap laws, being the New York Deceptive Acts law . . . and/or the Indiana Deceptive Consumer Sales Act[.]" DeMidio Complaint (ECF 1). The

2

Greenwells did likewise, suing REV and alleging the same three claims, except the Greenwells allege that their state law deceptive practices claim arises out "of applicable state Udap laws, being the Florida Deceptive and Unfair Trade Practices Act . . . and the Indiana Deceptive Consumer Sales Act[.]" Greenwell Complaint (ECF 1, 1:17-CV-350). The underlying facts giving rise to the Plaintiffs' claims are mostly irrelevant for present purposes, save for those assertions pertaining to the arbitration provision that is the subject of REV's motion. REV's motion to dismiss or stay is based solely on its contention that the Plaintiffs are bound by an arbitration provision contained in the written limited warranty covering the DeMidio and Greenwell RVs. REV contends that neither couple can proceed with their case "because there exists a binding arbitration agreement requiring the Plaintiffs to resolve any claim or controversy arising out of or relating to the warranty upon which their claims are based via arbitration in Milwaukee, Wisconsin. As such, venue in this district is improper." Amended Motion to Dismiss, pp. 1-2. Therefore, argues REV, these cases must be dismissed pursuant to Rule 12(b)(3). REV argues alternatively that "should this Court determine that dismissal is improper, a stay must be entered in order to allow the arbitrable claims to be resolved in arbitration as required under the warranty at issue." *Id*., p. 2. REV insists that the arbitration requirement contained in the limited warranty covering the RVs is valid in both cases and so litigation must be stayed pursuant to Section 3 of the Federal Arbitration Act. *Id*., p. 2. That statute provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action

> until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The Plaintiffs argue that no valid arbitration agreement was ever formed and so REV cannot compel them to participate in that process. The Plaintiffs insist that the "private arbitration process in Defendant's warranty is unenforceable here because (1) it does not comply with the federal disclosure requirements, (2) Plaintiffs never agreed to arbitrate this matter, and (3) the arbitration clause is illusory and violates public policy." Plaintiffs' Memorandum in Opposition (ECF 20), p. 2. The DeMidios and Greenwells claim the arbitration clause is void because neither couple was aware of it since REV "did not comply with the law's minimum disclosure requirements[.]" *Id*. As to the DeMidios, they state as follows:

> Prior to purchasing the RV, the salesman told the DeMidios that the REV warranty covered parts, equipment, and labor for one year. The salesman did not discuss any other terms contained in the REV warranty with the DeMidios. Notably, he did not discuss the arbitration clause. And, there were no signs in the dealership showroom, in the finance office, or on the RV itself that indicated that the REV warranty would be made available to the DeMidios before the sale.
>
> After the DeMidios signed the sales paperwork, the dealership employee gave them a binder containing various documents on how to use various parts of the Rv. However, the Owner's Manual, which contained a copy of the REV warranty, was packed inside the RV in a cabinet. And, the DeMidios did not have access to the RV until after they signed the sales paperwork. Moreover, REV never mentioned the arbitration clause when the DeMidios family complained directly to REV about its failure to repair the RV. Thus, at no time prior to filing their case in court was the DeMidio family aware of any arbitration clause in the warranty.

*Id*., p. 3 (internal citations to Affidavit of Vincent DeMidio omitted). The Greenwells likewise claim that they "were completely unaware of the arbitration clause until REV filed its motion to dismiss." *Id*., p. 4. The Greenwells state that "[p]rior to purchasing the RV, the Greenwells asked

4

the salesman about the warranty[]" and "[t]he salesman told the Greenwells that the REV warranty was for one year and that the chassis had a 3 year warranty. . . . The Salesman did not disclose any other terms contained in the REV warranty with the Greenwells." *Id*., pp. 4-5. They elaborate as follows:

> Although the Owner's Manual contains a copy of the warranty, the Owner's Manual was packed inside the RV in a cabinet. However, the Greenwells did not have access to the RV until after they signed the sales paperwork. . . . [D]espite repeatedly complaining to REV about the RV, REV never mentioned the arbitration clause. . . .
>
> To make matters worse, the Greenwells never had an opportunity to review the Owner's Manual or the REV warranty since the RV has been in either the defendant's dealership or REV's possession for repair attempts during nearly the entire time the Greenwells have owned it. Moreover, since the RV was not in their possession, the Greenwells asked the dealership for a copy of the warranty, but the dealership told the Greenwells that they had to get a copy of the warranty from REV. When the Greenwells asked REV for a copy of the warranty, REV told the Greenwells that they had to get a copy of the warranty from the dealership. And, neither the dealership nor REV provided the Greenwells with a copy of the warranty for the Greenwells to review when they requested it.

*Id*., p. 5.

Based on these factual assertions, the Plaintiffs contend that they cannot be compelled to arbitrate their claims under an arbitration agreement they knew nothing about. The Plaintiffs argue that "[t]he binding arbitration clause contained in the Owner's Manual does not comply with the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq*., the FTC Pre-Sale Availability of Written Warranty Terms, 16 C.F.R. § 702.3, or the FTC Informal Dispute Settlement Procedures Rule, 16 C.F.R. § 703.1 *et seq*." *Id*., p. 7. The Plaintiffs assert that "[a]n integral part–if not the central part–of the MMWA is the comprehensive disclosure requirements. . . . The MMWA delegates promulgation of specific disclosure requirements to the Federal Trade

Commission, but requires that the terms of any written warranty be made available to the consumer or prospective consumer prior to sale." *Id*. (citing 15 U.S.C. § 2302(a), (b)(1)(A); *Cunningham v. Fleetwood Motor Homes of Ga*., 253 F.3d 611, 621 (11th Cir. 2001)).

The Plaintiffs then get even more specific, arguing that the arbitration clause is unenforceable because: 1) "Defendant failed to make the warranty available pre-sale as required by 16 C.F.R. § 702.03[]" (*id*., p. 8); 2) "Defendant failed to properly disclose the arbitration clause on the face of the warranty as required by 16 C.F.R. § 703.2(b)[]" (*id*., p. 9); and 3) "Defendant failed to take steps reasonably calculated to make Plaintiffs aware of the existence of the arbitration clause as required by 16 C.F.R. § 703.2(d)[]" (*id*., p. 10).

The Plaintiffs' second argument in opposition to REV's motion, which is really a sibling to the first, is that "[i]n addition to failing to disclose the arbitration clause in the manner required in violation of federal law, Plaintiffs also never agreed to arbitrate this matter." Plaintiffs' Response, p. 18. The Plaintiffs argue as follows:

> A fundamental principle of contract law is that the parties mutually agree to all essential terms in the contract. . . . A Court can assume that a party has assented to the terms of a contract if the party is aware of the terms in the proposed contact and enters into the contract without indicating any non-acquiescence to those terms. . . . Here . . . Plaintiffs were completely unaware of the arbitration clause in the warranty until Defendant filed its motion to dismiss in this case.

*Id*., p. 19; *see* Exh. 1 (ECF 20-1), Affidavit of Vincent DeMidio, ¶ 17; Exh. 4 (ECF 20-4), Affidavit of Alfred Greenwell, ¶ 10. Since they could not assent to a provision they knew nothing about, the Plaintiffs contend that the arbitration requirement is rendered unenforceable as a matter of law.

The Plaintiffs' third argument in opposition to REV's motion is that the arbitration

6

provision violates public policy. The Plaintiffs insist that "Defendant's arbitration clause is unenforceable because it contains a fee shifting provision that is contrary to the Indiana Deceptive Consumer Sales Act, I.C. § 24-5-0.5-0.1 *et seq* ('IDCSA')[.]" *Id*., p. 20. In other words, forcing the Plaintiffs to engage in binding arbitration would deny them a remedy that Indiana law otherwise provides, and therefore the arbitration provision violates public policy. *Id*., pp. 20-24.

In its reply brief, REV counters the Plaintiffs' arguments with four of its own. First, REV contends that "arbitration agreements are not subject to the requirements governing informal dispute settlement procedures under the [MMWA]." Defendant's Reply (ECF 21), p. 2. REV points out that both the DeMidios and the Greenwells "specifically allege that they relied on REV's warranty in purchasing the subject RV[]" and that "[t]he limited written warranty upon which the Plaintiffs relied plainly informed them that . . . 'any claim or controversy arising out of or relating to this limited warranty, or breach thereof, shall be settled by arbitration administered by the American Arbitration Association in Milwaukee, Wisconsin in accordance with the Commercial Arbitration Rules of the American Arbitration Association.'" *Id*., pp. 2-3 (citing to DeMidio Complaint, ¶ 14; Greenwell Complaint, ¶ 12). REV contends that "[i]n light of this agreement [to submit to arbitration], the pending matter must be dismissed and arbitration compelled before the American Arbitration Association." *Id*., p. 3. REV then notes that "[t]he issue of binding arbitration under the [MMWA] has been considered by various courts, the majority of which have found that such provisions are enforceable." *Id*. (citing *Walker v. DaimlerChrysler Corp*., 856 NE.2d 90, 99 (Ct.App.Ind. 2007); *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 478 (5th Cir. 2002); *Davis v. S. Energy Homes, Inc*., 305 F.3d 1268, 1280

7

(11th Cir. 2002)).

Next, REV argues that "a more fundamental obstacle belies the notice arguments raised by the Plaintiffs. The Plaintiffs have sued for breach of contract and breach of the warranty of containing the binding arbitration provision. To establish these claims, they have alleged that they relied upon, and were induced by the written warranty. However, they now seek to eschew the binding arbitration provisions, while at the same time enforcing those terms beneficial to them. This they cannot do." *Id*., p. 5. REV states that "[i]t is axiomatic that, in a cause of action under the [MMWA], the plaintiff bears the burden of establishing compliance with the terms of the warranty. . . . Considering that the Plaintiffs have specifically sued for breach of contract and breach of written warranty, they are unable to meet their burden of proof as a matter of law without complying with the binding arbitration provisions plainly contained in the warranty. In other words, Plaintiffs' own statements in the[ir] Complaint[s] demonstrate their assent to the terms and conditions of the warranty, including the binding arbitration clause." *Id*., p. 6 (citations omitted).

REV's third argument is that it complied with notice requirements simply by making a copy of the limited warranty (containing the arbitration provision) *available* to the Plaintiffs. REV states that under 16 C.F.R. § 702.3, "the warrantor complies with its warranty disclosure obligations by simply 'providing a copy of the warranty with every consumer product.' *See* 16 C.F.R. § 702.3(b)(1)(i)(A). Plaintiffs have not and cannot argue that REV failed to provide a copy of the warranty with the product. Consequently, their argument fails." *Id*., pp. 6-7.

Finally, REV maintains that "Plaintiffs' public policy argument is unavailing." *Id*., p. 7. REV states that "Plaintiffs argue that because the arbitration clause states that the parties shall

8

bear the 'costs, fees and expenses of arbitration,' the provision is void as a matter of Indiana public policy because it eliminates the possibility that the Plaintiffs will recover their attorneys' fees." *Id*. (citing to Plaintiffs' Response, p. 23 ("Defendant's arbitration clause changes the fee shifting nature of [Indiana law], and places an enormous and unbearable financial risk on the consumer.")). Not so, says REV, since "the rules of the American Arbitration Association . . . clearly give the arbitrator the power to award fees to the prevailing party in his or her discretion if such an award is 'authorized by law.' . . . The Plaintiffs are free to argue that they are entitled to fees under applicable law in an arbitration setting, just as they can in court." *Id*. (quoting Section R-47, Commercial Rules of the American Arbitration Association).

The parties' briefs raise a host of arguments and on many fronts, and both sides are guilty of over-arguing the finer points of nondeterminative issues. But the threshold and determinative issue is whether the parties entered into a legally enforceable arbitration agreement. The Court concludes the answer is no, and so REV's motion must be denied and both cases will proceed in this Court.

## DISCUSSION

### I. Standard of review.

As stated, REV argues that there is a valid arbitration agreement between the parties that mandates that the Plaintiffs' claims against REV be resolved by way of arbitration under the Federal Arbitration Act, so the Plaintiffs' complaints must be dismissed under Federal Rule 12(b)(3) for improper venue. REV contends that mandatory, binding arbitration is the proper forum for resolution of the Plaintiffs' claims, not this Court. "When ruling on a 12(b)(3) motion to dismiss, we take all allegations in the complaint as true, unless contradicted by an affidavit,

9

and we can consider facts outside the complaint." *Serac Inc. v. United Packaging Grp., LLC*, 2018 WL 1469016, at *2 (N.D. Ill. Mar. 26, 2018) (citing *Nagel v. ADM Inv'r Servs., Inc.*, 995 F.Supp. 837, 843 (N.D. Ill. 1998)); *see also*, *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011) ("[w]hen ruling on a motion to dismiss for improper venue, the district court is not 'obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment' if the parties submit evidence outside the pleadings.") (quoting *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)).[1] In this case, both the

---

[1] As REV notes (*see* Defendant's Memorandum, pp. 4-5), the federal courts are split on whether Rule 12(b)(3) is the proper vehicle for enforcing an arbitration agreement. Some circuits hold that "[t]he appropriate procedure [is] for the district court to stay or dismiss the case based on a Rule 12(b)(6) or Rule 56 motion pending arbitration." *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018) (citations omitted). But as a sister court in this circuit explained:

> There is . . . competing authority as to the source of authority upon which district courts should rely in granting a motion to compel arbitration:
>
>> Some courts have taken the view that, if a district court determines that parties have agreed to arbitrate a dispute, the district court, at least temporarily, no longer has the authority to resolve arbitrable claims. *See* 9 U.S.C. § 3. Those courts consider that such a determination is jurisdictional and therefore, a Rule 12(b)(1) dismissal is appropriate. Other courts characterize the action as the plaintiff's failure to state a claim cognizable in federal court, a Rule 12(b)(6) dismissal. Indeed, there is authority indicating that the dismissal is entirely separate from the Rule 12(b) rubric.
>
> *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 (7th Cir. 2005) (footnotes omitted). Defendant relies on Rule 12(b)(3), which the Seventh Circuit has also held is an appropriate ground for a request to compel arbitration. *Id.* at 733; *see also Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011). In this case, the source of authority makes no difference in the overall analysis. In any event, since the Seventh Circuit has expressly sanctioned the use of Rule 12(b)(3) in deciding motions to compel arbitration, the court need not address the question further.

*Dries v. Onebeacon Am. Ins. Co.*, 2016 WL 755655, at *7, n. 1 (W.D. Wis. Feb. 25, 2016). Accordingly, REV based its motion to dismiss on Rule 12(b)(3), which is proper procedure in

DeMidios and the Greenwells submitted affidavits in support of their arguments. *See* Plaintiffs' Response, Exh. 1, Affidavit of Vincent DeMidio (ECF 20-1); Exh. 4, Affidavit of Alfred Greenwell (ECF 20-4).

The standard to be applied to REV's alternative request for a stay comes from the statutory language in Section 3 of the FAA, to wit: if a case is "referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, *upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement*, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (italics added). But while it was proper for REV to bring its present motion under Rule 12(b)(3), at least in this circuit (*see* footnote 1), REV's alternative request faces a legal obstacle. It is well established that a district court cannot compel arbitration in another district. As the Seventh Circuit has explained:

> [U]nder § 4 of the FAA, a district court cannot compel arbitration outside the confines of its district. *See Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) ("[O]nly the district court in that forum can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless." (quotation marks omitted)). In this situation, we have held that a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district.

*Faulkenberg*, 637 F.3d at 808 (citing *Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir. 2003)); *see also Harris Capital Fund, LLC v. Grillo*, 160 F.App'x 727, 728, 2005 WL

---

this circuit.

3514594 (10th Cir. 2005) ("[T]his court has published *Ansari* [*v. Qwest Commc'ns Corp.*], 414 F.3d 1214, [1217 (10th Cir. 2005)], in which we joined the majority of courts holding that "'where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under [9 U.S.C.] § 4. In other words, a district court lacks authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration.)' *Id*. at 1219-20."); *Faulkenberg*, 637 F.3d at 808 ("[A] Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district."); *Zoller v. UBS Sec. LLC*, 2018 WL 1378340, at *8, n. 1 (N.D. Ill. Mar. 19, 2018) (same, citing *Faulkenberg*).

These cases make clear that this Court lacks the authority to stay this case pending arbitration in another district, i.e., the Eastern District of Wisconsin in Milwaukee, and so REV's request for a stay is improper. REV tacitly acknowledges this issue in its memorandum by stating that "the Plaintiffs' actions should be dismissed given that the arbitration clause requires arbitration outside the confines of this district." Defendant's Memorandum, p. 7. But REV asserts in the next breath that "in the event that dismissal is inappropriate, section 3 of the FAA requires this Court enter a stay so that arbitration can be held in accordance with the terms of the limited warranty." *Id*., p. 8. REV fails to explain how this Court would have the authority to do so. REV's reply brief ignores the conundrum altogether. In the end, though, this is a non-issue given the Court's conclusion that the arbitration provision at issue in this case is unenforceable and therefore REV is not entitled to relief under Rule 12(b)(3) or 9 U.S.C. § 3.

**II. Analysis.**

As stated above, the threshold issue before the Court, which is also the determinative one, is whether the subject arbitration provision is enforceable in the first place. That determination involves discussion and application of both federal law, as it pertains to the Federal Arbitration Act, and Indiana contract law.

As this Court (Judge Lozano) has explained:

> Congress enacted the FAA, 9 U.S.C. §§ 1 et seq., to reverse the pervasive judicial hostility towards arbitration and to institute a national policy both favoring it and "plac[ing] arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). If contracts to arbitrate involve "commerce," the FAA deems those agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While section 2 reflects a "liberal federal policy favoring arbitration," it also provides recognition that agreements to arbitrate are ultimately matters of contract. *AT & T Mobility LLC v. Concepcion*, – U.S. –, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011) (citations omitted). As such, the Supreme Court has stated that arbitration agreements are to be enforced pursuant to their written terms and that "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes." *Id*. at 1748-49 (citations and emphasis omitted). *See also Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002) ("arbitration is a matter of contract between the relevant parties; no party can be required to arbitrate absent an agreement to do so."). As the Supreme Court has recently reemphasized, "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, – U.S. – , 130 S.Ct. 2847, 2857, 177 L.Ed.2d 567 (2010) (emphasis in original) (citations and internal quotation marks omitted).
>
> Under the FAA, "arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich American Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). It is a matter for the court to determine "whether parties have agreed to submit a particular dispute to arbitration." *Granite Rock*, 130 S.Ct. at 2855 (citation and internal quotation marks omitted). Questions regarding the applicability of an arbitration clause to a particular dispute are governed by "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938,

13

944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). However, as courts analyze these issues, "'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Only when a court has determined that "the parties' arbitration agreement [i]s validly formed and that it cover[s] the dispute in question and [i]s legally enforceable," should arbitration be compelled. *Granite Rock*, 130 S.Ct. at 2858. In addition, the Seventh Circuit has recently stated:

> To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation. Once it is clear, however, that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law. To this end, a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) (internal quotation marks and citations omitted).

*Hoopes v. Gulf Stream Coach, Inc.*, 2012 WL 1029352, at *2-4 (N.D. Ind. Mar. 26, 2012).

Decisions from Indiana courts on this issue are particularly helpful. In *Anonymous, M.D. v. Hendricks* the court explained as follows:

> When determining whether parties have agreed to arbitrate a dispute, we apply state law interpretation principles governing contracts. *Blimpie Intern., Inc. v. Choi*, 822 N.E.2d 1091, 1094 (Ind.Ct.App. 2005). We must attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Id*. Parties are bound to arbitrate all matters not explicitly excluded that reasonably fit within the language used, although we will not extend arbitration agreements by construction or implication. *Id.* Furthermore, when interpreting a contract, we must read it as a whole and construe the language so as not to render any words, phrases, or terms ineffective or meaningless. *Brownsburg Mun. Bldg. Corp. v. R.L. Turner Corp.*, 933 N.E.2d 905, 907 (Ind.Ct.App. 2010). Like any other contract, arbitration agreements may be invalidated by generally applicable contract defenses such as fraud, duress, impossibility, or unconscionability. *Brumley v. Commonwealth Business College*

14

*Educ. Corp.*, 945 N.E.2d 770, 776 (Ind.Ct.App. 2011).

*Anonymous, M.D. v. Hendricks*, 994 N.E.2d 324, 329 (Ind.Ct.App. 2013). The Indiana Court of Appeals has also explained that "arbitration agreements, like any other contract, are subject to general contract law and defenses and can be challenged 'upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2. For example, agreements to arbitrate could still be attacked as being unconscionable or as having resulted from fraud or unequal bargaining power." *Walker v. DaimlerChrysler Corp.*, 856 N.E.2d at 99, n. 2. The Indiana Court of Appeals has also held that "[u]nder Indiana contract law, the party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement." *Progressive Se. Ins. Co. v. Empire Fire & Marine Ins. Co.*, 88 N.E.3d 188, 197 (Ind.Ct.App. 2017) (citing *Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654 N.E.2d 848, 849 (Ind.Ct.App. 1995)). "Then, the movant must demonstrate that the disputed matter is the type of claim the parties agreed to arbitrate." *Id*. (citing *Brumley*, 945 N.E.2d at 776).

In *Mohammed v. Uber*, the plaintiff sued Uber alleging a host of claims arising out of his employment with the company. Uber moved to compel arbitration based on an arbitration provision contained in an employment agreement. The plaintiff argued that he never saw or agreed to the provision when he accepted the terms of his employment. The district court concluded that Uber failed to meet its burden of establishing that a valid arbitration agreement was formed, explaining as follows:

> Here, Mohammed disputes whether he ever formed an arbitration agreement with Uber in the first place. His argument that he never signed the agreement, assented to it, or authorized the DSR to assent to it on his behalf are precisely the type of questions that go to an agreement's formation, as articulated by the Supreme Court in *Buckeye*. As every first-year law student learns, formation of a valid

15

> contract requires an offer and acceptance. *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007). "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012) (quoting Restatement (Second) of Contracts § 24 (1981)). Acceptance, in turn, requires an outward manifestation of assent to be bound by words or acts. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016).
>
> Here, Mohammed's account of his interaction with the DSR raises issues as to whether a valid offer and acceptance ever occurred.

*Mohammed v. Uber Techs., Inc.*, 237 F.Supp.3d 719, 728-29 (N.D. Ill. 2017). The district court further held:

> A party opposing a motion to compel arbitration bears the burden of identifying a triable issue of fact as to the existence of the purported arbitration agreement. Tinder [v. Pinkerton Sec.], 305 F.3d [728] at 735 [(7th Cir. 2002)]. The opponent's evidentiary burden is akin to that of a party opposing summary judgment under Rule 56. *Id*. "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id*. The Court must believe the evidence of the party opposing arbitration and draw all justifiable inferences in its favor. *Id*.

*Id*. at 725. See also, *A.D. v. Credit One Bank, N.A.*, 2018 WL 1414907, at *3 (7th Cir. Mar. 22, 2018) ("because arbitration agreements are contracts, a party 'cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'") (citing *Scheurer v. Fromm Family Foods, LLC*, 863 F.3d 748, 751 (7th Cir. 2017) (quoting in turn *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

In the present case the DeMidios and Greenwells argue that they never assented to an arbitration agreement–never knew about it, in fact–and thus no valid agreement was formed as a matter of law. REV's argument is that the arbitration provision was included in the limited warranty that was "provided" to the DeMidios and the Greenwells when they purchased their

16

RVs, and the Plaintiffs are therefore bound by its terms. But REV's argument ignores, or leaps over, the fundamental first step–that "arbitration is a matter of contract between the relevant parties [and] no party can be required to arbitrate absent an agreement to do so." *Rosenblum v. Travelbyus.com*, 299 F.3d at 662. In this case there is no evidence that the Plaintiffs agreed to the arbitration provision. Still, REV argues that they should be charged with knowledge of it because it was included in the written limited warranty that was "provided" to them and so they had actual or at least constructive knowledge of it (although REV does not expressly use that term). REV presents no authority to support its argument that the Plaintiffs can be said to have agreed to the arbitration provision under such circumstances. On the contrary, the law says otherwise. Parties cannot be compelled to arbitrate if they did not contract to do so, which in this case they clearly did not.

REV tries to bolster its argument by claiming that the Plaintiffs cannot avoid or reject the arbitration provision while at the same time suing REV for breach of the very warranty that contains that provision. That is, the Plaintiffs should not be permitted to cherry pick those provisions of the written limited warranty they like and cast aside the ones they don't. As noted previously, REV argues that "[t]he Plaintiffs have sued for breach of contract and breach of the warranty of containing the binding arbitration provision. To establish these claims, they have alleged that they relied upon, and were induced by the written warranty. However, they now seek to eschew the binding arbitration provisions, while at the same time enforcing those terms beneficial to them. This they cannot do." Defendant's Reply, p. 5. This argument is unavailing because, once again, it *presumes* the existence of a valid arbitration agreement. But consumers do not necessarily agree to an arbitration provision simply because it was part and parcel of a

broader contract. "[I]f a party accepts benefits under a contract, this conduct does not constitute acceptance of specific, written terms unless there is evidence that the party took the benefits with knowledge of those terms." *Mohammed v. Uber*, 237 F.Supp.3d at 728-29 (citing *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016) (refusing to conclude that a party who accepted benefits under a contract thereby accepted an arbitration agreement where he had no notice of the agreement's terms); *F.T.C. v. Cleverlink Trading Ltd.*, 519 F.Supp.2d 784, 796 (N.D. Ill. 2007) (holding that a party's receipt of service under a contract did not indicate acceptance of specific, punitive terms under the contract because there was no evidence that the party knew of or agreed to the terms)). As stated at the outset, the Plaintiffs submitted supplemental authority in support of this argument on March 9 (ECF 22-1). That filing is a copy of a decision issued by the district court for the Northern District of Alabama on February 28, 2018, in which the Court denied the defendant RV manufacturer's attempt to enforce an arbitration agreement under circumstances that are strikingly similar to those of the DeMidios and Greenwells. The Court ruled that "[w]hile plaintiff received warranty repairs to the RV . . . there is no evidence that he was aware of an arbitration clause pertaining to the warranty. . . . Accordingly, there is a lack of evidence to support defendant's contention that plaintiff should be considered to have assented to the arbitration clause by his conduct." *Id*. (*Garcia v. Tiffin Motor Homes, Inc.*, No. 3:17-CV-1162, p.10 (N.D. Ala. Feb. 28, 2018)). REV responded to this supplemental authority by insisting that the *Garcia* case is factually distinguishable from the cases at bar. Defendants' Response (ECF 23), p. 2). But those factual differences do not change the calculus, and the reasoning and holding in *Garcia* is informative notwithstanding that it is a non-binding opinion from a district court in another circuit. In any event, while the *Garcia* case is

18

informative, this Court did not rely on it when reaching its conclusion in the cases at bar. For these reasons, REV's argument that the Plaintiffs should be bound by the arbitration provision simply on the basis that it was included in the written limited warranty is unavailing. REV fails to carry its burden of establishing the validity and enforceability of the arbitration provision and its motion to dismiss must be denied.

## CONCLUSION

For the reasons discussed above, the Amended Motion to Dismiss Plaintiffs' Complaints; or, Alternatively, to Stay the Action[s] Pursuant to 9 U.S.C. § 3 filed by Defendant REV Recreation Group, Inc. (ECF 16 in 1:17-CV-326; ECF 21 in 1:17-CV-350) is DENIED.

Date: April 10, 2018.

   /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana